FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERRANCE Y.,[1] | No. 4:20-cv-05190-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | ECF Nos. 21, 24 |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 21, 24. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 21, and denies Defendant's motion, ECF No. 24.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

ORDER - 2

404.1502(a), 416.920(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

ORDER - 3

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 29, 2017, Plaintiff applied for Title XVI supplemental security

income benefits alleging a disability onset date of January 1, 2017.  Tr. 20, 83,

176-85.  The application was denied initially, and on reconsideration.  Tr. 102-10,

114-20.  Plaintiff appeared before an administrative law judge (ALJ) on October

11, 2019.  Tr. 38-68.  On October 30, 2019, the ALJ denied Plaintiff's claim.  Tr.

17-37.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since June 29, 2017, the application

date.  Tr. 21.  At step two, the ALJ found that Plaintiff has the following severe

impairment: lumbar degenerative disc disease.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 26.  The ALJ then concluded that Plaintiff has the RFC to perform

medium work with the following limitations:

> He can frequently stoop and climb ramps, stairs, ladders, or scaffolds.
> He must avoid occasional exposure to extreme cold temperatures and

ORDER - 6

hazards (dangerous moving machinery and unprotected heights).  He is limited to the performance of simple, routine tasks with a reasoning level of 3 or less due to physical impairments affecting concentration, persistence and keeping pace capabilities.

Tr. 26-27.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 31.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry worker, industrial cleaner, and stores laborer.  Tr. 32.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 32-33.

On August 12, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ conducted a proper step-two analysis;

ORDER - 7

1      3.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2      4.  Whether the ALJ conducted a proper step-five analysis.

3  ECF No. 21 at 6-7.

4                              **DISCUSSION**

5  **A. Medical Opinion Evidence**

6      Plaintiff contends the ALJ erred in his consideration of the opinions of N.K.

7  Marks, Ph.D., Meneleo Lilagan, M.D., and Steven Rode, D.O.  ECF No. 21 at 9-

8  14.

9      As an initial matter, for claims filed on or after March 27, 2017, new

10 regulations apply that change the framework for how an ALJ must evaluate

11 medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

12 *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

13 C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give

14 any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*,

15 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

16 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all

17 medical opinions or prior administrative medical findings from medical sources.

18 20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the persuasiveness of

19 medical opinions and prior administrative medical findings include supportability,

20 consistency, relationship with the claimant (including length of the treatment,

ORDER - 8

frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are

ORDER - 9

not exactly the same," the ALJ is required to explain how "the other most

persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.

§ 416.920c(b)(3).

The parties disagree over whether Ninth Circuit case law continues to be

controlling in light of the amended regulations, specifically whether the "clear and

convincing" and "specific and legitimate" standards still apply.  ECF No. 24 at 9-

11; ECF No. 25 at 1-2.  "It remains to be seen whether the new regulations will

meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's

reasoning and whether the Ninth Circuit will continue to require that an ALJ

provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No.

EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

(W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer

to the new regulations, even where they conflict with prior judicial precedent,

unless the prior judicial construction 'follows from the unambiguous terms of the

statute and thus leaves no room for agency discretion.'"  *Gary T.,* 2020 WL

3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet

Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d

Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld

1  unless 'they exceeded the Secretary's authority [or] are arbitrary and

2  capricious.'").

3        There is not a consensus among the district courts as to whether the "clear

4  and convincing" and "specific and legitimate" standards continue to apply.  *See,*

5  *e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

6  Nov. 10, 2020) (applying the specific and legitimate standard under the new

7  regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.

8  Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,

9  2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new

10 regulations displace the treating physician rule and the new regulations control);

11 *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D.

12 Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and

13 legitimate nor clear and convincing standard).  This Court has held that an ALJ did

14 not err in applying the new regulations over Ninth Circuit precedent, because the

15 result did not contravene the Administrative Procedure Act's requirement that

16 decisions include a statement of "findings and conclusions, and the reasons or basis

17 therefor, on all the material issues of fact, law, or discretion presented on the

18 record."  *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL

19 4071863, at *5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the

20 Court's analysis in this matter would differ in any significant respect under the

specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31

(9th Cir. 1995).

### 1.  Dr. Marks

On January 17, 2018 Dr. Marks conducted a psychological examination and

rendered an opinion on Plaintiff's functioning for Washington DSHS.  Tr. 337-42

(duplicate at 355-60).  Dr. Marks diagnosed Plaintiff with major depressive

disorder, recurrent episode, moderate; generalized anxiety disorder; persistent

depressive disorder (dysthymia); and she noted diagnoses to be ruled out, including

unspecified neurocognitive disorder, unspecified or unknown substance-related

disorder, along with possible ADHD.  Tr. 339.  Dr. Marks opined Plaintiff has

severe limits in his ability to set realistic goals and plan independently; marked

limits in his ability to understand, remember, and persist in tasks by following

detailed instructions, in his ability to learn new tasks, in his ability to perform

routine tasks without special supervision, in his ability to communicate and

perform effectively in a work setting, and in his ability to complete a normal

workday and workweek without interruptions from psychologically based

symptoms; he has moderate limitation in his ability to understand, remember, and

persist in tasks by following very short and simple instructions, adapt to changes in

a routine work setting, make simple work related decisions, be aware of normal

hazards and take appropriate precautions, ask simple questions or request

ORDER - 12

assistance, and to maintain appropriate behavior in a work setting.  Tr. 340.  Dr. Marks opined Plaintiff's impairments have an overall moderate severity rating, were not primarily the result of alcohol or drug use within the past 60 days, and would persist following 60 days of sobriety, but also that chemical dependency assessment was recommended; she opined his impairments were expected to last 12 months with treatment.  *Id.*  She also recommended counseling, assistance with housing, case management and further assessment for chemical dependency and cognitive issues.  *Id.*  The ALJ found Dr. Marks' opinion unpersuasive.

The ALJ found "despite finding numerous moderate and marked limitations in basic work activity, and a severe limitation … yet overall severity was considered only moderate, which appears internally inconsistent and may reflect Dr. Marks' own ambivalence about her assessment."  Tr. 25.  Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. § 416.920c(c)(1).  The ALJ explained that Dr. Marks noted "his description of symptoms was vague, and that chemical dependence factors could not be ruled out as contributing to his report of memory and cognitive problems"; and that she made a disclaimer that her findings

ORDER - 13

1   were based on Plaintiff's self-report along with clinical presentation at the time of

2   the evaluation and that, as such, other sources should also be considered.  Tr. 25.

3        First, the ALJ found Dr. Marks' opinion internally inconsistent because she

4   determined overall severity was moderate.  *Id.*  Plaintiff contends that Dr. Marks'

5   determination of overall moderate severity is consistent with her individual

6   findings because Dr. Marks found numerous moderate limitations; Plaintiff points

7   out "Dr. Marks assessed moderate limitations in six out of 12 basic work activities

8   (50[percent]) …."  ECF No. 21 at 11.  The ALJ acknowledges Dr. Marks found

9   several moderate limitations and does not explain how Dr. Mark's finding of

10  overall moderate severity is internally inconsistent with her assessment or how this

11  reflects her ambivalence with her assessment.  *See* Tr. 25.  The ALJ's conclusory

12  statements fail to meet the burden of "setting out a detailed and thorough summary

13  of the facts and conflicting clinical evidence, stating his interpretation thereof, and

14  making findings."  *Trevizo v. Berryhill*, 871 F.3d 644, 675 (9th Cir. 2017) (internal

15  citations omitted).  The ALJ's conclusion that Dr. Marks' determination was

16  internally inconsistent because she found overall moderate severity is not

17  supported by substantial evidence.

18       The ALJ also concluded that her determination of overall moderate severity

19  may reflect Dr. Marks' ambivalence about her assessment because "she noted his

20  description of symptoms was vague and that chemical dependence factors could

ORDER - 14

not be ruled out as contributing to this memory and cognitive problems."  Tr. 25.

However, Dr. Marks uses the term vague only once in her evaluation, to note

Plaintiff's "description was vague" concerning past ADD symptoms or diagnosis

under "Medical/Mental Health Treatment History," and this does not support a

conclusion Dr. Mark was overall ambivalent with her assessment.  Tr. 337.  As for

chemical dependency, Dr. Marks indicated that he presented with "memory

problems, cognitive problems," and that "[chemical dependency] factors could not

be ruled out as a contributing factor" although she indicated he "was not under the

influence today."  Tr. 337-38.  She also explained that the cognitive or memory

problems he presented with "may be the result of head injuries from bike accident

or [chemical dependency] factors.  Further assessment recommended."  Tr. 339.

Upon mental status testing, Dr. Marks observed several abnormalities including

poorly organized speech, minimal eye contact, hopeless attitude, depressed and

anxious mood and affect, along with poor long term memory, fund of knowledge,

and concentration; her assessed limitations appear within the range of her findings

upon clinical interview and abnormal findings upon mental status exam, and the

ALJ does not explain how her opinion concerning possible cognitive impairment

or chemical dependency is internally inconsistent or ambivalent.  *See* Tr. 341-42.

Additionally, the ALJ did not assess the consistency of Dr. Marks' 2018

opinion with her findings from a 2016 evaluation.  In 2016, Dr. Marks diagnosed

1    him with major depression, severe, while in 2018 her diagnosis was major

2    depressive disorder, moderate. *Compare* Tr. 339, Tr. 251. Dr. Marks assessed

3    overall marked limitations in 2016, with recommendations including immediate

4    intervention for depression, and she noted he should be monitored for increasing

5    suicidality. Tr. 352. Dr. Marks diagnoses in 2016 also included an alcohol related

6    disorder in patrial remission. Tr. 351. The ALJ did not discuss her 2016 opinion,

7    however, concluding that it was irrelevant because it was outside the period at

8    issue and "listed alcohol problems …while not separating out the [Plaintiff's]

9    functional abilities from the substance use disorder." Tr. 26. As Plaintiff points

10   out, if chemical dependency in the past or during the period at issue contributes to

11   his mental health impairments, the ALJ must consider whether the limitations

12   remain in the absence of such use. ECF No. 21 at 12. Without discussion of the

13   consistency of Dr. Mark' opinion with the longitudinal record, the Court is unable

14   to meaningfully review whether the ALJ's interpretation of the evidence, rather

15   than Dr. Mark's opinion, is rational. *See Brown-Hunter v. Colvin*, 806 F.3d 487,

16   492 (9th Cir. 2015). The ALJ does not explain why Dr. Marks' opinion of overall

17   moderate limitation in 2018 reflects ambivalence about her assessment, and this

18   finding is not supported by substantial evidence.

19        The ALJ also found that Dr. Marks' opinion was internally inconsistent

20   because she made a disclaimer that her evaluation was based on plaintiff's self-

1   reports and clinical presentation at the time of the interview, and that as such other

2   sources in addition to this report should be considered.  Tr. 25 (citing Tr. 337).

3   Plaintiff contends this language was not authored by Dr. Marks but is "preprinted

4   standard form language" on the DSHS forms.  ECF No. 21 at 12.  The Court notes

5   that Dr. Marks' 2016 evaluation also contains this language, but a 2014 evaluation

6   by Dr. Moon does not.  *See* 349-54, 299-303.  A clinical interview and mental

7   status evaluation are objective measures and cannot be disregarded as mere self-

8   report.  *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  Here, Dr.

9   Marks performed a clinical interview and administered psychological testing

10  including Beck depression and anxiety testing and performed a mental status exam.

11  *See* Tr. 337-42.  There is no evidence of malingering and Dr. Marks noted Plaintiff

12  was cooperative.  Tr.  341.  The ALJ did not explain how Dr. Marks' inclusion of a

13  general statement that her evaluation was based on client's self-report along with

14  clinical presentation at the evaluation shows her opinion is internally inconsistent

15  or reflects ambivalence about her 2018 assessment, and the ALJ's conclusions are

16  not supported by substantial evidence.

17       Additionally, the ALJ did not assess the consistency of Dr. Marks' 2018

18  opinion with evidence from other sources in the longitudinal record, including the

19  opinion of Dr. Lewis, which the ALJ did not consider in his decision.  Tr. 343-45.

20  Consistency is one of the most important factors an ALJ must consider when

determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).

The more consistent an opinion is with the evidence from other sources, the more

persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).  A few weeks after Dr.

Marks' January 2018 evaluation, Janis Lewis, Ph.D. completed a Review of

Medical Evidence.  *Id.*  Dr. Lewis reviewed Dr. Marks' evaluation, noting she

"didn't mark limitation c. [Perform activities within a schedule, maintain regular

attendance and be punctual within customary tolerances].  I opined a marked

severity[,]"; Dr. Lewis also increased Plaintiff's overall severity rating, noting

"changed overall severity to marked from moderate, based on the severity of

[Plaintiff's] symptoms as written on the evaluation, his 5 marked [mental health]

limitations plus one severe limitations, [sic] his 'chronic serious anxiety' and the

likelihood of cognitive deficits."  Tr. 343-45.  Dr. Lewis' 2018 opinion is labeled a

"new decision," *see* Tr. 344, and appears to amend or replace Dr. Mark' opinion.

The ALJ did not discuss the opinion of Dr. Lewis and failed to assess the

consistency of Dr. Marks' opinion with the longitudinal record, as required by the

regulations, and his conclusions are not supported by substantial evidence.

On remand, the ALJ is instructed to reconsider Dr. Marks' opinions, along

with considering the opinion of Dr. Lewis and any other mental health opinions in

the record, using the factors of consistency and supportability as required by the

ORDER - 18

1    regulations.  The ALJ is to incorporate the limitations into the RFC or give reasons

2    supported by substantial evidence to reject the opinions.

3        *2.  Dr. Lilagan*

4        In January 2018, Dr. Lilagan conducted a physical functional evaluation and

5    rendered an opinion on Plaintiff's functioning for Washington DSHS.  362-65.  Dr.

6    Lilagan's impression was low back pain with left sciatica and left clavicular pain,

7    with history of left clavicle fracture.  Tr. 363.  He opined Plaintiff had moderate

8    limitation in his ability to stand, walk, lift, carry, handle, push, pull, reach, stoop,

9    and crouch due to low back pain/sciatica; and moderate limitation in his ability to

10   lift, carry, handle, push, pull, and reach due to left clavicular pain.  *Id.*  Dr. Lilagan

11   opined that Plaintiff was capable of performing sedentary work and estimated that

12   the current limitation on work activities would persist with available treatment for

13   six months.  Tr. 364.  He further opined Plaintiff needed an orthopedic consult due

14   to his reports of tingling and numbness in his left lower extremity and his left

15   clavicle issues.  *Id.*  The ALJ did not address Dr. Lilagan's opinion.

16       Plaintiff contends the ALJ erred by failing to discuss Dr. Lilagan's opinion,

17   pointing out had the ALJ fully credited Dr. Lilagan's opinion, he would have

18   reached a different disability determination.  *See* ECF No 21 at 12-13.  Defendant

19   concedes that the ALJ did not discuss the opinion, but argues any error was

20   harmless because Dr. Lilagan's limitations were only temporary.  ECF No. 24 at

ORDER - 19

14.  Under the regulations, the ALJ must evaluate medical opinions using the factors listed in 20 C.F.R. § 416.920c.  Additionally, the ALJ is required to consider "all medical opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  While "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), the ALJ must also meet his burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Trevizo v. Berryhill*, 871 F.3d 644, 675 (9th Cir. 2017) (internal citations omitted).

Given the matter is being remanded for the ALJ to reevaluate the opinion of Dr. Marks and to consider the opinion of Dr. Lewis, upon remand the ALJ is also directed to consider Dr. Lilagan's opinion.  The ALJ is to incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject the opinion.

*3.  Dr. Rode*

In November 2017, Dr. Rode conducted a physical consultative evaluation and rendered an opinion on Plaintiff's functioning.  Tr. 331-35.  Dr. Rode diagnosed him with "sacral pain with low back pain with a history of motor vehicle accident," and "joint pains with a history of collar bone fracture with subtle deformity but normal range of motion."  Tr. 334.  He opined Plaintiff had no limit

ORDER - 20

1  in his ability to stand and walk and could sit for six hours in an eight hour

2  workday.  Tr. 335.  The ALJ found Dr. Rode's opinion mostly persuasive.

3      Plaintiff contends the ALJ erred by relying on Dr. Rode's opinion because

4  Dr. Rode did not review imaging after 2014, and imaging taken the day of his 2017

5  evaluation demonstrated "advanced progression of [Plaintiff's] lumbar conditions."

6  ECF No. 21 at 14.  Defendant contends the ALJ reasonably assessed Dr. Rode's

7  opinion and the ALJ took the x-rays into consideration when he included greater

8  limitations than those assessed by Dr. Rode.  ECF No. 24 at 14-16.

9      Given the matter is being remanded for the ALJ to reevaluate other medical

10  opinions, the ALJ is also directed to reconsider Dr. Rode's opinion.

11     Upon remand, the ALJ is instructed to reconsider all medical opinion

12  evidence using the factors of supportability and consistency as required by the

13  regulations, and to incorporate the limitations into the RFC or give reasons

14  supported by substantial evidence to reject the opinions.

15  **B. Step Two**

16     Plaintiff contends the ALJ erred by failing find Plaintiff's mental health

17  impairments severe.  ECF No. 21 at 14-16.  At step two of the sequential process,

18  the ALJ must determine whether the claimant suffers from a "severe" impairment,

19

20

1    i.e., one that significantly limits her physical or mental ability to do basic work

2    activities.  20 C.F.R. § 416.920(c).

3         To establish a severe impairment, the claimant must first demonstrate that

4    the impairment results from anatomical, physiological, or psychological

5    abnormalities that can be shown by medically acceptable clinical or laboratory

6    diagnostic techniques.  20 C.F.R. § 416.921.  In other words, the claimant must

7    establish the existence of the physical or mental impairment through objective

8    medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable

9    medical source; the medical impairment cannot be established by the claimant's

10   statement of symptoms, a diagnosis, or a medical opinion.  20 C.F.R. § 416.921.

11        An impairment may be found to be not severe when "medical evidence

12   establishes only a slight abnormality or a combination of slight abnormalities

13   which would have no more than a minimal effect on an individual's ability to

14   work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is

15   not severe if it does not significantly limit a claimant's physical or mental ability to

16   do basic work activities; which include walking, standing, sitting, lifting, pushing,

17   pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

18   understanding, carrying out and remembering simple instructions; responding

19   appropriately to supervision, coworkers, and usual work situations; and dealing

20

ORDER - 22

with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[2]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

As the case is being remanded for the ALJ to reconsider the medical opinion evidence, the ALJ is also instructed to reconsider the step-two analysis.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 21 at 16-20.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an

---

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 23

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R.

§416.929I.  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

    The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that Plaintiff's assertion

of total disability under the Social Security Act is not supported by the weight of

the evidence.  Tr. 28.

    As the case is being remanded for the ALJ to reconsider the medical

opinion evidence, the ALJ is also instructed to reconsider Plaintiff's symptom

claims in the context of the entire record.

**E. Step Five**

    Plaintiff contends the ALJ erred at step five.  ECF No. 21 at 20.  At step five

of the sequential evaluation analysis, the burden shifts to the Commissioner to

ORDER - 25

1    establish that 1) the claimant can perform other work, and 2) such work "exists in

2    significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*,

3    700 F.3d at 389.  In assessing whether there is work available, the ALJ must rely

4    on complete hypotheticals posed to a vocational expert.  *Nguyen v. Chater*, 100

5    F.3d 1462, 1467 (9th Cir. 1996).  The ALJ's hypothetical must be based on

6    medical assumptions supported by substantial evidence in the record that reflects

7    all of the claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir.

8    2001).  The hypothetical should be "accurate, detailed, and supported by the

9    medical record."  *Tackett*, 180 F.3d at 1101.

10          Plaintiff contends the ALJ erred by failing to conduct an adequate analysis at

11    step five, based on the failure to address Dr. Lilagan's opinion limiting Plaintiff to

12    sedentary work.  ECF No. 21 at 20.  As the case is being remanded for the ALJ to

13    reconsider the medical opinion evidence, the ALJ is also instructed to perform the

14    five-step analysis anew, including reconsidering the step-five analysis.

15    **F.  Remedy**

16          Plaintiff urges this Court to remand for an immediate award of benefits.  *Id.*

17    "The decision whether to remand a case for additional evidence, or simply to

18    award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d

19    1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

20    When the Court reverses an ALJ's decision for error, the Court "ordinarily must

ORDER - 26

1 | remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041,

2 | 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

3 | proper course, except in rare circumstances, is to remand to the agency for

4 | additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

5 | 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

6 | cases, the Ninth Circuit has "stated or implied that it would be an abuse of

7 | discretion for a district court not to remand for an award of benefits" when three

8 | conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the

9 | credit-as-true rule, where (1) the record has been fully developed and further

10 | administrative proceedings would serve no useful purpose; (2) the ALJ has failed

11 | to provide legally sufficient reasons for rejecting evidence, whether claimant

12 | testimony or medical opinion; and (3) if the improperly discredited evidence were

13 | credited as true, the ALJ would be required to find the claimant disabled on

14 | remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874

15 | F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied,

16 | the Court will not remand for immediate payment of benefits if "the record as a

17 | whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759

18 | F.3d at 1021.

19 |

20 |

ORDER - 27

Here, the Court finds further proceedings are necessary to resolve conflicts in the record, including conflicting medical opinions. As such, the case is remanded for further proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 24**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 31, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 28